1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9
10
11

| | |
|---|---|
| MAURICIO ARROYO VILLA, et al., | Case No. 22-cv-07358-NC |
| Plaintiffs, | **ORDER GRANTING FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT; AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, CLASS REPRESENTATIVE INCENTIVE AWARDS, AND SETTLEMENT ADMINISTRATION EXPENSES; AND REQUIRING POST-DISTRIBUTION ACCOUNTING** |
| v. | |
| EAH COMMUNITY HOUSING, INC., et al., | |
| Defendants. | |
| | Re: ECF 71, 72, 77, 78 |

Before the Court are Plaintiffs' Motion for Final Approval of Class/Collective Action Settlement (the "Final Approval Motion," ECF 72) and Motion for Attorneys' Fees, Litigation Costs, Class Representative Incentive Awards, and Settlement Administration Expenses (the "Fee Motion," ECF 71). Both motions are unopposed. For the reasons stated below, the Court finds the proposed settlement is fair, reasonable, and adequate, and GRANTS the Final Approval Motion. The Court further finds that Class Counsel's request for 30% of the settlement fund is inappropriate and instead awards the 25%

United States District Court
Northern District of California

benchmark rate, but that the other expenditures from the common fund are reasonable, and therefore GRANTS IN PART and DENIES IN PART the Fee Motion.  Specifically, the Court orders that fees in the amount of $179,407.25 and litigation costs of $8,241.00 be paid to Class Counsel, a service award of $7,500 each be paid to Plaintiffs Mauricio Arroyo Villa and Angela Noble, and a settlement administration cost of $12,000.00 be paid to Phoenix Settlement Administrators.  The Court also orders both parties to file a Post-Distribution Accounting within 21 days after settlement checks become stale (or, if no checks are issued, all funds have been paid).

## I.      BACKGROUND

### A.      Plaintiffs' Allegations

On February 9, 2024, Plaintiff Mauricio Arroyo Villa and Angela Noble filed an Amended Complaint individually and on behalf of similarly situated employees of Defendant EAH Community Housing, Inc., a/k/a EAH Inc., alleging that Defendant violated the Fair Labor Standards Act (FLSA) and California wage and hour laws.  ECF 46.  The Court has previously described Plaintiffs' allegations in detail and presumes familiarity with the facts of the case.  Briefly stated, Plaintiffs allege that Defendant, in violation of federal and state labor laws, failed to compensate its employees for all hours worked, including "on call time."  Plaintiffs further allege that Defendant failed to reimburse employees for necessary business expenditures and failed to provide accurate wage statements.

### B.      Procedural History

On October 30, 2024, following the exchange of "voluminous" information between the parties and two full-day sessions facilitated by a third-party mediator, the Parties reached an agreement in principle to settle.  Thereafter, Plaintiffs moved for preliminary approval of the settlement.  ECF 49.  The Court granted the motion.  ECF 59.

After a review of the amount of workweeks revealed a larger number than anticipated, the Parties entered into an Amended Settlement Agreement ("Settlement Agreement") (ECF 72-1).  The Parties then moved again for approval of the Settlement

Agreement.  ECF 60.  The Court granted Plaintiffs' Amended Motion for Preliminary Approval on May 28, 2024.  ECF 70.  The Court therefore preliminarily approved the settlement, provisionally certified the Class and the Collective, and directed that notice be mailed to each member of the Settlement Class.  *Id.*

The Court set a date for the Fairness Hearing and ordered that any objections to the settlement be filed with the Court no later than September 2, 2024.  *Id.*  The Fairness Hearing took place on November 13, 2024, and November 27, 2024, both via Zoom video.  ECF 79; ECF 80.  All parties were represented by counsel.  *Id.*  No class members filed objections to the settlement nor appeared at the Fairness Hearing.  *Id.*  Only seven of the 716 Class or Collective members requested exclusion.  ECF 72-2 ¶ 8.

**C.    The Settlement**

The Settlement Agreement provides that Defendant will pay a gross settlement amount of $717,629.00 (plus all applicable employer-side payroll taxes).  Settlement Agreement ¶ 1.19.  Subject to the Court's approval, the following amounts are to be deducted from the Gross Settlement:

| Description: | Amount: |
|---|---|
| Class Counsel's Fees | $215,288.70 |
| Class Counsel's Costs | $8,241.00 |
| Service Awards | $15,000.00 |
| Settlement Administration Costs | $12,000.00 |
| PAGA Payment | $35,000.00 |
| Remaining for Class/Collective | $432,099.30 |

ECF 77-1 at 4–5.

The remaining $432,099.30 (the "Net Settlement Amount") will be distributed to members of the Settlement Class.  Settlement Agreement ¶ 8.1.1.  The Parties have allocated $86,419.86 (20% of the Net Settlement Amount) to the FLSA Collective and $345,679.44 (80% of the Net Settlement Amount) to the California Wage Class.  *Id.*

The Net Settlement Amount shall be allocated to each Settlement Member based on

United States District Court
Northern District of California

1  their proportionate Workweeks Worked during the Class or Collective Period. *Id.* ¶ 8.1.2.

2  This is determined by multiplying the Net Settlement Amount by a fraction, the numerator

3  of which is the Final Settlement Member's total Workweeks Worked during the Class or

4  Collective Period, and the denominator of which is the total Workweeks Worked by all

5  Final Settlement Members during the Class or Collective Period. *Id.* If there are any

6  timely submitted Requests for Exclusion, the Settlement Administrator shall

7  proportionately increase the Individual Settlement Amounts for each Final Settlement

8  Class Member so that the amount actually distributed to the Final Settlement Class

9  Members equals 100% of the Net Settlement Amount allocated toward the Released Class

10  Claims. *Id*.

11  To the extent the total value of all claims is less than 100% of the Net Settlement

12  Amount, the unclaimed portion will be allocated to Settlement Members who cashed the

13  first check on a proportional basis relative of the size of their claims. *Id.* Each employee's

14  calculation in connection with these unclaimed funds will include the employee paying

15  both the employee and employer side of payroll taxes. *Id.*

16  In the event the amount of the uncashed check proceeds is less than $5,000, the

17  unclaimed proceeds will be allocated to California Rural Legal Assistance, Inc. *Id.* ¶ 8.1.2.

18  In the event the amount of the uncashed check proceeds is greater than $5,000, the

19  unclaimed proceeds will (not later than two hundred (200) calendar days from the date of

20  mailing of the checks) will be allocated to Settlement Class/Collective Members who

21  cashed the first check on a proportional basis relative of the size of their claims. *Id.* Any

22  checks from the second distribution that are not cashed within one-hundred-eighty (180)

23  calendar days from the date of the mailing of the second distribution of checks shall be

24  canceled or voided and the Settlement Administrator shall pay over the amount represented

25  by the checks, including any otherwise unpaid interest accumulated in the Qualified

26  Settlement Fund, to California Rural Legal Assistance, Inc. *Id.*

27  In exchange for the Gross Settlement Amount, Plaintiffs and all other members of

28  the Settlement Class agree to release any and all claims that "relate in any way" to the

1    allegations in the Complaint, including Defendant's alleged violations of California's

2    Labor Code and unfair competition laws, and further agree to a general release of claims

3    under California Civil Code § 1542.  *Id.* ¶¶ 1.32, 9.1.  The Class Representatives generally

4    release all claims against Defendant arising out of their relationship with Defendant, not

5    including any claims arising out of their participation in this lawsuit.  *Id.* ¶¶ 1.32, 9.2.

## II.    THE SETTLEMENT CLASS WILL BE CERTIFIED

The Court begins with Plaintiffs' request that it "confirm as final" the certification of the Class (including appointment of the class representatives and class counsel) and the designation of the action as a collective action under the FLSA.  To do so, the Court must ascertain whether the Class satisfies the "four threshold requirements of … Rule 23(a): numerosity, commonality, typicality, and adequacy of representation," as well as the requirements of one of the subsections of Rule 23(b).  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013) (quoting Fed. R. Civ. P. 23).  The Court provisionally certified the Class when it preliminarily approved the settlement and is not aware of any reason to depart from its prior analysis.  Nevertheless, the Court addresses each of the relevant requirements here.

### A.    Numerosity

Rule 23(a)'s numerosity requirement is satisfied where the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Rule "provides no bright-line test or minimum number of class members necessary to meet the numerosity requirement," although many courts have adopted a "rule of thumb" that a proposed class of more than 40 persons is sufficiently numerous.  *A.R. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474, 480 (D. Or. 2013) (citations omitted).

Here, the Class consists of 561 members.  Joinder of all these potential plaintiffs would be impracticable.  Accordingly, the Court finds the numerosity requirement is met.

### B.    Commonality

Rule 23(a)'s commonality requirement is satisfied where "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A single common issue will

suffice.  See *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (collecting cases).

Here, the class members' claims involve common questions of law and fact regarding whether Defendant's official or unofficial policies resulted in underpayment of work performed by Class members, whether Defendant properly paid waiting time, whether it properly paid proper wage rates, and whether Defendant issued wage statements that did not comply with California law.  The answers to these questions would "'resolve … issue[s] that [are] central to the validity of each one of the claims in one stroke.'"  *Id.* (citations omitted).  Accordingly, the Court finds the commonality requirement is satisfied.

**C.    Typicality**

Rule 23(a) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "'The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation omitted).

Here, the claims of the Class Representatives arise out of the same course of conduct and resulted in the same injuries as those of the class they seek to represent.  The wrongful conduct alleged in the operative complaint is not unique to the Class Representatives, and the damages to the class members, if any, arise out of the non-payment of wages for time spent in their employment and failure to provide accurate wage statements.  The Court finds the typicality requirement is satisfied.

**D.    Adequacy**

Rule 23(a)'s final requirement is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine whether this requirement is met, the Court must assess whether (1) the interests of the class representatives and their counsel conflict with those of other class members and (2) whether the class representatives and their counsel will prosecute the action vigorously on

behalf of the class.  *See Ellis*, 657 F.3d at 985.  "These inquiries require the court to consider a number of factors, including 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'"  *Ontiveros v. Zamora*, 303 F.R.D. 356, 364 (E.D. Cal. 2014) (quoting *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992)).

The Court finds that the proposed Class Representatives and their counsel have vigorously prosecuted this action, leading ultimately to the settlement now before it, and have faithfully discharged their duties as fiduciaries to the absent class members.  The Court finds no evidence of collusion or antagonism.  Furthermore, counsel for the class is experienced in employment litigation, and has successfully litigated numerous wage-and-hour matters and class actions such as this one.  ECF 60-3 ¶¶ 14–15.  Therefore, the Court finds this requirement has been satisfied.

### E.    Rule 23(b)(3) – Superiority and Predominance

In addition to "satisfy[ing] each prerequisite of Rule 23(a)," a party seeking class certification must also "establish an appropriate ground for maintaining the class action under Rule 23(b)."  *Walker v. Life Ins. Co. of the S.W.*, 953 F.3d 624, 630 (9th Cir. 2020).

Here, Plaintiffs seek certification under Rule 23(b)(3), which permits certification where "the [C]ourt finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry asks whether a proposed class is "sufficiently cohesive to warrant adjudication by representation."  *Walker*, 953 F.3d at 630 (citations omitted).

The Court should answer in the affirmative where there are significant, common questions that "can be resolved in a single adjudication" and there is "a clear justification" for adjudication on a representative, rather than individual, basis.  *See id.*  "Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a

United States District Court
Northern District of California

7

class action is efficient and whether it is fair." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175–76 (9th Cir. 2010). "In the settlement context," however, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020) (citation omitted).

The Court reaffirms its findings that the requirements of superiority and predominance have been satisfied here. *See* ECF 70. The Court's conclusions that resolution of the significant and common questions regarding Defendant's conduct and whether that conduct violated the law would drive resolution of the class members' claims, and that class-wide adjudication of those claims was superior considering "the relatively limited potential recovery for the class members as compared with the costs of litigating the claims," remain unchanged. *Id.*; *Thompson v. Costco Wholesale Corp.*, No. 14-cv-2778, 2017 WL 697895, at *6 (S.D. Cal. Feb. 22, 2017).

## F.    Certification of the Settlement Class is Appropriate

Having found the requirements of Rule 23(a) and (b)(3) are met, the Court certifies the following class for settlement purposes: "All persons who are or were employed by Defendant as a non-exempt employee in California at any time between November 22, 2018, and March 22, 2024, the date of Preliminary Approval of the Initial Settlement Agreement (the 'Class Period') who have not returned a timely Request for Exclusion." Settlement Agreement ¶ 1.6.

Plaintiffs Mauricio Arroyo Villa and Angela Noble are appointed class representatives and will hereafter be referred to collectively as the "Class Representatives." Justicia Laboral LLC is appointed to represent the class and will hereafter be referred to collectively as Class Counsel.

The Court further finds that the FLSA's less stringent requirement that the members of the proposed collective be "similarly situated" is satisfied. *See* 29 U.S.C. § 216(b). Plaintiffs "are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018). For the same reasons the Court

finds that the proposed Class may be certified pursuant to Rule 23, the Court finds Plaintiffs are similarly situated with respect to other members of the proposed collective.

Accordingly, the Court designates the following FLSA collective for the purposes of settlement: "All persons who are or were employed by Defendant in California and Hawaii at any time from November 22, 2019, and March 22, 2024, the date of Preliminary Approval of the Initial Settlement Agreement, who timely return an Opt-In Form." Settlement Agreement ¶ 1.7.

## III.    FINAL SETTLEMENT APPROVAL DETERMINATION

### A.    Standard for Approval Under Rule 23(e)

Judicial policy strongly "favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Nevertheless, Rule 23 imposes upon district courts an "independent obligation to ensure that any class settlement is 'fair, reasonable, and adequate,'" to ensure that neither the class representatives nor their counsel have "bargained away absent class members' rights" in the settlement. *Briseño v. Henderson*, 998 F.3d 1014, 1022, 1027 (9th Cir. 2021) (citing Fed. R. Civ. P. 23(e)(2)(C)). "This requires a balancing assessment of: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 669 (9th Cir. 2020) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). "The Court must also determine that the settlement is not the 'product of collusion among the negotiating parties.'" *Id.*

### B.    Standard for Approval of FLSA Settlement

The Court's approval is also required for settlement of an FLSA collective class action claim. *See Kerzich v. Cty. of Tuolomne*, 335 F.Supp.3d 1179, 1183 (E.D. Cal. 2018) ("Because an employee cannot waive claims under the FLSA, they may not be settled

1    without supervision of either the Secretary of Labor or a district court.") (citing *Barrentine*

2    *v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)).  Before approving the

3    settlement, the Court must determine that it constitutes "a fair and reasonable resolution of

4    a bona fide dispute" over "the existence and extent of [d]efendant's FLSA liability."  *Selk*

5    *v. Pioneers Mem'l Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (citations

6    omitted); *see also Ambrosino v. Home Depot U.S.A., Inc.*, No. 11-cv-1319, 2014 WL

7    3924609, at *1 (S.D. Cal. Aug. 11, 2014) (noting that the Court may approve an FLSA

8    settlement that "reflects 'a reasonable compromise over [disputed] issues'").

9         In considering whether to approve the proposed settlement of the collective's FLSA

10   claims, the Court will consider: (1) the plaintiff's range of possible recovery; (2) the stage

11   of proceedings and amount of discovery completed; (3) the seriousness of the litigation

12   risks faced by the parties; (4) the scope of any release provision in the settlement

13   agreement; (5) the experience and views of counsel and the opinion of participating

14   plaintiffs; and (6) the possibility of fraud or collusion.  *Selk*, 159 F.Supp.3d at 1173.  The

15   Court will approve the settlement if, upon consideration the totality of the circumstances as

16   reflected in these factors, it appears that the settlement "is a reasonable compromise" that

17   will "vindicate, rather than frustrate, the purposes of the FLSA."  *Id.* at 1172–73.

18        **C.    Application to the Proposed Settlement**

19        Although there are important distinctions between the policy objectives of—and the

20   rights protected by—Rule 23 and the FLSA, the foregoing discussion demonstrates that

21   there is considerable overlap between the factors considered for settlement approval.  *See*

22   *Kerzich*, 335 F.Supp.3d at 1184 (noting that "courts often apply the Rule 23 factors for

23   assessing proposed class action settlements when evaluating the fairness of an FLSA

24   settlement, while recognizing that some of those factors do not apply because of the

25   inherent differences between class actions and FLSA actions").  Furthermore, the Court

26   has a "'considerably less stringent' obligation to ensure fairness of the settlement in a

27   FLSA collective action than a Rule 23 action because parties who do not opt in are not

28   bound by the settlement."  *Millan v. Cascade Water Servs. Inc.*, 310 F.R.D. 593, 607 (E.D.

United States District Court
Northern District of California

Cal. 2015) (citation omitted).  Thus, the Court finds that if the proposed settlement warrants approval under Rule 23, it should also be approved under the FLSA, and will therefore conduct its Rule 23 and FLSA analyses in tandem.  *See Thompson*, 2017 WL 697895, at *6.

### 1.    Strength of Plaintiff's Case

As a rule, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (quoting 4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002)).  This is particularly true where "there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, although Plaintiffs believed their claims had merit, Defendant had factual and legal defenses to Plaintiffs' allegations, including that a prior class action settlement was res judicata to much of this settlement and that Defendant's pay policies were compliant with California and federal law.

In the face of these legal and factual disputes, continued litigation presented a real risk of negative outcomes at class certification, summary judgment, trial, and appeal. The Court finds this factor weighs in favor of approval.

### 2.    The Value of the Settlement Compared to Plaintiffs' Potential Recovery

In deciding whether a proposed settlement is fair, reasonable and adequate, the Court must "consider[]" the "settlement's benefits . . . by comparison to what the class actually gave up by settling." *See Campbell v. Facebook*, 951 F.3d 1106, 1123 (9th Cir. 2020) (citation omitted).  However, the Court must remain mindful that "the very essence of a settlement is compromise." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted).  The Court should not "withhold [its] approval" of a proposed settlement merely because it represents "a fraction of the potential recovery at trial." *Nat'l*

1   *Rural Telecomms. Coop.*, 221 F.R.D. at 527.

2       As noted, the Settlement Agreement calls for a gross non-reversionary payment of

3   $717,629.00.  Settlement Agreement ¶ 1.19.  Class Counsel represented a maximum

4   exposure to Defendant of $25,433,111.85.  ECF 60-1 at 24.  After subtracting fees,

5   counsel's costs, settlement administration costs, incentive awards, and PAGA penalties,

6   there remains a net settlement amount of $432,099.30 for distribution to the Settlement

7   Class.  A total of $86,419.86 of the Net Settlement Amount (20%) will be allocated to the

8   FLSA collective members, with the remain $345,679.44 (80%) apportioned to the Class.

9   Settlement Agreement ¶ 8.1.1.

10      Given the risks of non-recovery and Defendant's defenses, the Court finds that the

11  amount of the settlement as compared to Plaintiffs' potential recovery weighs in favor of

12  approval of the settlement.

13              **3.        Extent of Discovery**

14      Next, the Court assesses whether the "parties have sufficient information to make

15  an informed decision about settlement."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

16  459 (9th Cir. 2000) (citation omitted)).  "A settlement following sufficient discovery and

17  genuine arms-length negotiation is presumed fair."  *Nat'l Rural Telecomms. Coop.*, 221

18  F.R.D. at 528.  Plaintiffs here represent that at the time of the settlement, Defendant had

19  produced, and Plaintiffs' counsel had reviewed, extensive documents and data related to

20  the claims, including: time and pay records; policies for timekeeping, training manuals;

21  and data modeling and statistical analyses for identifying pre-shift and post-shift activities

22  for the members of the Settlement Class.  ECF 60-3 ¶¶ 29–34.  The Parties attended a full-

23  day mediation sessions facilitated by a neutral mediator, in preparation for which

24  Plaintiffs' counsel spent a significant amount of time researching the law.  Settlement

25  Agreement ¶¶ 2.4–2.5.

26      Given this history, the Court is persuaded that the Parties entered into the settlement

27  knowing the relevant facts and strengths and weaknesses of their claims and defenses. The

28  Court finds this factor weighs in favor of approving the settlement.

United States District Court
Northern District of California

#### 4.    Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted).  Here, James Dore, lead counsel for the Settlement Class, has submitted a declaration in support of the Final Approval Motion.  ECF 72-3.  Mr. Dore has over 15 years' experience litigating in the areas of employment law and commercial litigation, including complex and class actions.  ECF 60-3 ¶¶ 4, 6.  Mr. Dore represents that both Class Counsel and Defendant's counsel worked diligently to ensure that the settlement was fair, reasonable, and adequate.  *Id.* ¶ 49.   Mr. Dore further declares that the settlement is "a strong result for the Class and is well deserving of final approval."  ECF 72-3 ¶ 4.  Given Mr. Dore's considerable experience in this area, the Court finds that his assessment is entitled to consideration, and further finds his recommendation weighs in favor of approval.

#### 5.    Reaction of Class Members

As noted, as of this date, no member of the Settlement Class objected to the Settlement, and only seven Settlement Class members opted out of participating in the Settlement.  ECF 72-2 ¶¶ 8, 10.  The lack of objections and relatively small number of opt-outs "raises a strong presumption" that the proposed Settlement is "favorable" to members of the Settlement Class.  *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529 (citations omitted).  The Court finds this factor weighs in favor of approval.

#### 6.    Indicia of Collusion

The Ninth Circuit recently clarified that as part of its balancing of factors, the Court must examine the terms of the Settlement for the presence of any "red flags" that indicate collusion between the settling parties at the expense of the absent class members, and "scrutinize them where they appear." *Briseño*, 998 F.3d at 1026–27.  Those red flags are: an attorney fee award that is "disproportionate" to the overall settlement; an agreement among counsel not to challenge the amount of fees requested, and a reversion of unclaimed funds to the defendant rather than to the class.  *Id*. at 1023.

Here, the Settlement is non-reversionary, and, for reasons discussed in more detail below, the Court finds that the attorney fee award requested by counsel is for the most part fair and reasonable. Thus, the only red flag for the Court's scrutiny is the agreement by Defendant not to oppose Class Counsel's fee request (a so-called "clear sailing" provision). As the *Briseño* court noted, the existence of a clear-sailing provision standing alone, is not "an independent basis for withholding settlement approval." *Id.* at 1027. On examination, the Court observes that the Parties explicitly stated that the payment of counsel's requested fees is not a material term of the agreement. Settlement Agreement ¶ 7.2.1. The Parties also agreed that if the Court approved a lesser fee award, the difference between the award and the fees requested would revert to the Settlement Class, thereby avoiding the collusive concerns addressed in *Briseño*. *Id.*; *see also Briseño*, 998 F.3d at 1027 (noting that when "excessive fees" are returned to the defendant, "a class member may not have standing to object" to the fee request). The Court is therefore persuaded that the clear-sailing provision in the Settlement is not evidence of collusion between the parties or their counsel at the expense of the Settlement Class.

### D.    Balancing of Factors

The Court has considered the foregoing factors and finds that on balance, they weigh in favor of the Settlement. Therefore, the Court finds the Settlement fair, adequate, and reasonable, and approves the settlement of the class claims under Rule 23.

The Court further finds that the settlement constitutes a fair and reasonable resolution of a bona fide dispute over FLSA provisions, and approves the settlement of the FLSA claims.

### E.    Cy Pres Award

In addition to asking "whether the *class settlement*, taken as a whole, is fair, reasonable, and adequate to all concerned," we must also determine whether the *distribution* of the approved class settlement complies with our standards governing *cy pres* award." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1040 (9th Cir. 2011).

Plaintiffs request that "in the event the amount of the uncashed check proceeds is

less than $5,000, the unclaimed proceeds will be allocated to California Rural Legal Assistance, Inc." Settlement Agreement ¶ 16. Additionally, "any checks from the second distribution that are not cashed within one-hundred-eighty (180) calendar days . . . shall be canceled . . . and . . . the Settlement Administrator shall pay over the amount represented by the checks . . . to California Rural Legal Assistance, Inc." *Id.* These cy pres awards must qualify as "the next best distribution" to giving the funds directly to class members. *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990). To qualify as an appropriate cy pres beneficiary, there must be "a driving nexus between the plaintiff class and the cy pres beneficiaries." *Nachshin*, 663 F.3d at 1038.

Here, the California Rural Legal Assistance is a non-profit law firm that provides free civil legal services to low-income residents of California's rural counties that focuses on the legal areas of employment and labor, housing, education, rural health, and leadership development. Because California Rural Legal Assistance helps with employment and labor, the cy pres award is guided by "the objective of the underlying statute" of the FLSA, and because the law firm helps California residents, it is in "the interests of the silent class members." *Id.* at 1039; *Six Mexican Workers*, 904 F.2d at 1308. As such, the Court finds that the cy pres award is appropriate and approves the settlement of the FLSA claims.

## IV. ATTORNEYS' FEES AND OTHER EXPENDITURES FROM THE SETTLEMENT FUNDS

### A. Attorneys' Fees

Class Counsel seek 30% of the settlement fund ($215,288.70 of $717,629.00). ECF 71-1 at 8. The Court ultimately concludes that this request is inappropriate and instead awards the benchmark 25%.

When a class action settlement awards attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). The court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an

1    amount." *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

2    In the Ninth Circuit, there are two methods of assessing attorneys' fees in common

3    fund cases: the "percentage-of-recovery" method and the "lodestar" method. *Id.* at 942.

4    Although the method applied is a matter of the Court's discretion, the "primary" method

5    used is the percentage method. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th

6    Cir. 2002). Where the percentage-of-recovery method is used, it is well-established that

7    25% of a common fund is a presumptively reasonable amount of attorneys' fees. *In re*

8    *Bluetooth,* 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the

9    'benchmark' for a reasonable fee award....").

10    However, "[t]he 25% benchmark rate, although a starting point for analysis, may be

11    inappropriate in some cases." *Vizcaino*, 290 F.3d at 1048. "Selection of the benchmark or

12    any other rate must be supported by findings that take into account all the circumstances of

13    the case." *Id.* The Court considers the following factors: (1) the skills displayed by Class

14    Counsel; (2) the risks taken by Class Counsel; (3) the result achieved for the class; and (4)

15    a lodestar cross-check. *Lesevic v. Spectracforce Techs. Inc.*, No. 19-cv-03126, 2021 WL

16    1599310, at *2 (N.D. Cal. Apr. 23, 2021) (citing *Vizcaino*, 290 F.3d at 1048–49). The

17    Court discusses each factor in turn.

18    **1.    Class Counsel Skill**

19    While Class Counsel skillfully and professionally prosecuted this action, the facts of

20    the case, on balance, do not warrant a departure from the 25% benchmark.

21    While it is true that Class Counsel contended with and prevailed against a third

22    party in both district and appellate court who sought to intervene in the case challenging

23    Class Counsel's adequacy, this alone does not merit an upward adjustment from 25%.

24    Further, even if defense brought up a "myriad of legal defenses," this is different from

25    having to defend against motions to dismiss to survive. *See In re Nexus 6P Prod. Liab.*

26    *Litig.*, No. 17-cv-02185, 2019 WL 6622842, at *12 (N.D. Cal. Nov. 12, 2019) (finding

27    skill in successfully defending against two motions to dismiss despite weaknesses).

28    Further, Class Counsel did not have to wrestle with technical subject matter or litigate a

novel claim. *Grace v. Apple,* No. 17-cv-00551, 2021 WL 1222193, at *2 (N.D. Cal. Mar. 31, 2021) (finding skill in analyzing technical subject matter and achieving a settlement on a novel claim). In fact, this case is near identical to *Rodriguez v. EAH Inc.,* 21-cv-00884, a successfully settled case in the Superior Court of California, County of Santa Cruz that brought similar claims against the same Defendant.

### 2. Risks Taken by Class Counsel

The moderate risk assumed by Class Counsel also does not support an upward adjustment from the 25% benchmark.

Here, there were potential issues of class certification, which could prevent Plaintiffs from recovering. ECF 71-1 at 14. However, Class Counsel did not face extensive motion practice or trial preparation that denial of class certification or threatened zero recovery for Plaintiffs. *See Grace*, 2021 WL 1222193, at *3. Additionally, as stated before, this case brought similar claims as *Rodriguez*, which settled for $1.45 million, showing "unique legal skills and abilities" was not required for this settlement. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047.

Class Counsel also took on litigation on a contingency basis for two years, which weighs in favor of a substantial attorney's fee award. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 523 (N.D. Cal. 2020) (finding that litigating on a contingency basis for more than three years supports an upward adjustment to 28.33%). However, Courts differ on the adjustment to the benchmark that is warranted, if any, based on the contingent nature of the representation. *Compare Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) (awarding attorneys' fees in the amount of 25% of $1 million settlement), *with Ching v. Siemens Indus. Inc.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (awarding attorneys' fees in the amount of 30% of $425,000 settlement). Here, the requested 30% of the $717,629 settlement, while in the range, is on the upper end. On balance with other risks taken, the Court finds that an upward judgment of the benchmark to 30% is not warranted and instead, 25% is appropriate.

### 3.    Result Achieved for the Class

Class Counsel achieved a reasonable monetary result: $717,629.00 non-reversionary common fund that does not merit a departure from the 25% benchmark. Settlement Agreement ¶ 1.19.

Class Counsel negotiated successfully to shift the burden of paying all administrative expense, attorneys' fees, and expenses onto Defendant to avoid any reduction from class members' recoveries. *Id.*; *See Chamberlan v. Ford Motor Co.*, No. c 03-2628, 2005 WL 6154898, at *2 (N.D. Cal. Apr. 22, 2010).  Class Counsel also succeeded in pairing that recovery with an easy claims process, as Plaintiffs will automatically receive a check without having to file a claim form.  ECF 71-1 at 8; *See Lesevic*, 2021 WL 1599310, at *3.

However, the fund compensates only for a fraction of maximum statutory penalties. *See Lesevic*, 2021 WL 1599310, at *3.  The best estimate for Defendant's maximum exposure would be $25,433,111.85, not including liability for violations of the California Code relating to rest/meal breaks, inaccurate wage statements, and failure to reimburse expenses.  ECF 60-1 at 24.  Thus, the $717,629.00 settlement fund compensates for at most, 2.8% of the class's maximum potential recovery.  *Compare with Lesevic*, 2021 WL 1599310 (finding that settlement fund compensating for 7% of the class's maximum potential was only reasonable, not outstanding).  Further, Class Counsel did not secure other important benefits beyond the settlement fund to balance the lower recovery.  *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. cv-08-1365, 2010 WL 1687829, at *2 (N.D. Cal. Apr. 22, 2010).

In short, because the Court is not convinced the monetary recovery was exceptional, it does not believe it merits an increase to 30%.  However, paired with an easy claims process and plaintiff-friendly terms, it finds attorneys' fees of 25% is appropriate.

### 4.    Lodestar Cross Check

Finally, the lodestar cross-check supports a 25% fee award in this case.

To confirm an award's reasonableness through a lodestar cross-check, a court takes

18

"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," as supported by adequate documentation. *In re Bluetooth*, 654 F.3d at 941. Where, as here, the lodestar is being used as a cross-check, courts may do a rough calculation "with a less exhaustive cataloging and review of counsel's hours." *Young v. Polo Retail, LLC*, No. 02-cv-04546, 2007 WL 951821, at *6 (N.D. Cal. Mar. 28, 2007).

Here, Class Counsel estimate their lodestar is $113,950.00 across 227.7 hours as of August 2, 2024. ECF 71-2 ¶ 19. Class Counsel further represents that to account for additional future work performed related to final approval and settlement administration, they anticipate that another $10,000 to $20,000 would be added to their lodestar. *Id.* ¶ 27. Thus, Class Counsel's requested fee results in a lodestar multiplier of between 1.61 and 1.89 on the requested attorneys' fee award of 30% of the settlement fund (depending upon whether the estimates for future work are included). *Id.* ¶ 28. This lodestar cross-check confirms that the 25% award to Class Counsel under the percentage-of-the-fund method is not excessive, at a multiplier of 1.34 and 1.57. This multiplier falls between what is "generally appropriate" for complex class actions. *See Bellinghaus*, 306 F.R.D. at 265.

To the extent Class Counsel argue that the multiplier requires awarding even more than 25% of the settlement fund, Class Counsel are mistaken. The Court may adjust a lodestar "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors." *Lesevic*, 2021 WL 1599310, at *6 (citing *In re Bluetooth*, 654 F.3d at 944). Here, as analyzed above, Class Counsel's performance and results were not exceptional. Further, the Court notes that Class Counsel failed to provide sufficient detail in their billing summaries. While contemporaneous records of individual entries are not always required, the level of specificity at which Class counsel documented their time makes it difficult or impossible for the Court to scrutinize whether the time and expenses are indeed "reasonable." ECF 60-3 ¶ 44. Notably, Class Counsel do not separate what services Mr. Dore and Mr. Schlade individually completed. *Id.*; *see* Civil L.R. 54-5(b)(2) (requiring a statement of the service rendered by *each* person) (emphasis added). This could, for example, deprive the Court from determining whether duplicative work

was performed.  The Court also notes that Class Counsel's rates of $500 are a $100 increase from their past attorneys' fees requests this past year.  *See, e.g., Izaguirre v. Prosper Builders, Inc.*, No. 23-cv-00316, 2024 WL 4187080, at *2 (N.D. Cal. Aug. 1, 2024) (requesting $400 per hour); *Rodriguez v. Valle Elite Remodeling Servs., LLC*, No. 23-cv-388, 2024 WL 4363628 (M.D. Fla. Oct. 1, 2024) (requesting $400 per hour).

Accordingly, the Court awards Class Counsel 25% of the settlement fund: $179,407.25.

## B.    Litigation Costs

Attorneys compensated from a common fund are entitled to recover their reasonable litigation costs.  *See Bellinghausen*, 306 F.R.D. at 265.  Class Counsel represent that they have incurred $8,241.00 in costs to date for filing and service, in addition to fees paid to the mediator.

The Court has reviewed counsel's billings and finds these expenditures were reasonable and necessary.  Accordingly, the Court orders that Class Counsel be reimbursed for its reasonable litigation costs from the Settlement Funds in the amount of $8,241.00.

## C.    Class Representative Incentive Awards

Plaintiffs seek the Court's approval of the following incentive awards from the Settlement Funds: $7,500 each to named Plaintiffs Mauricio Arroyo Villa and Angela Noble.  Settlement Agreement ¶ 7.3.  Counsel relates that the Class Representatives expended considerable time and effort in making the settlement possible.  ECF 71-1 at 26. They participated in multiple interviews, provided documents to counsel, and diligently worked to support counsel's efforts in pursuing the case, reaching the settlement, and seeking the Court's approval of that settlement.  *Id.*  They willingly undertook the role of class representatives after being advised of the responsibilities that such role would encompass.  *Id.*

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'"  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).  Such awards, however,

20

are discretionary. *Rodriguez v. W. Publ'g Corp.*,k 563 F.3d 948, 958 (9th Cir. 2009). Here, the Court finds the requested incentive awards are reasonable and appropriate. Relative to both the overall settlement amount and the average recovery for members of the Settlement Class, the proposed awards are "well within the usual norms of 'modest compensation' paid to class representatives for services performed in the class action." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943 (citation omitted). The proposed awards will fairly compensate Mauricio Arroyo Villa and Angela Noble for their assistance to class counsel and their efforts on behalf of the Settlement Class. Therefore, the Court approves the requested incentive awards and orders that such awards be paid from the Settlement Funds.

### D.    Settlement Administration Costs

Finally, Plaintiffs request payment from the Settlement Funds to the claims administrator Phoenix Settlement Administrators ("Phoenix"). Settlement Agreement ¶ 15. The Court has reviewed Mr. Mitzner's declaration detailing the work performed by Phoenix, in which he describes the work performed to date, including printing and mailing the notice, assisting members of the Settlement Class with questions about the settlement, investigating any notices returned as undeliverable, and receiving and processing requests for exclusion. ECF 72-2 ¶ 2. According to Mr. Mitzner's declaration, the total past and anticipated future costs for settlement administration are $12,000.00. *Id.* ¶ 19.

The Court finds that these costs are reasonable and necessarily incurred, and therefore approves the request for settlement administration costs in the amount of $12,000 be paid from the Settlement Funds.

## V.    CONCLUSION

For the reasons stated above, the Court finds the Settlement fair, reasonable and adequate, and a reasonable compromise of disputed FLSA claims, and therefore GRANTS the Final Approval Motion. The Court further finds that the requested 30% attorneys' fee award is inappropriate in this case based on reasonableness factors, and instead finds that the benchmark 25% attorneys' fee is appropriate. It also finds that the other requested

United States District Court
Northern District of California

expenditures from the common fund are reasonable.  As such, the Court GRANTS IN PART and DENIES IN PART the Fee Motion.  Specifically, the Court orders that fees in the amount of $179,407.25 and litigation costs of $8,241.00 be paid to Class Counsel, a service award of $7,500 each be paid to Plaintiffs Mauricio Arroyo Villa and Angela Noble, and a settlement administration cost of $12,000.00 be paid to Phoenix Settlement Administrators.

Further, within 21 days after settlement checks become stale (or, if no checks are issued, all funds have been paid to class members, cy pres beneficiaries, and others pursuant to the settlement agreement), the parties must file a Post-Distribution Accounting (and post it on the settlement website), which provides the following information:  the total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average, median, maximum, and minimum recovery per claimant, the method(s) of notice and the method(s) of payment to class members, the percentage of success for each method of notice and payment (if known), the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, plaintiffs' counsel's updated lodestar total, and the lodestar multiplier. The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.  The Court retains jurisdiction to enforce the settlement.

**IT IS SO ORDERED.**

Dated:  December 13, 2024

_____
NATHANAEL M. COUSINS
United States Magistrate Judge